IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULA ELLSWORTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04-CV-3499 |
| v. | ) |
| | ) Wayne R. Andersen |
| URS CONSTRUCTION SERVICES, | ) District Judge |
| RODRIGUEZ & ASSOCIATES, and | ) |
| SHARIF ABOU-SABH, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on motions by URS Construction Services ("URS"), Rodriguez & Associates ("Rodriguez"), and Sharif Abou-Sabh ("Abou-Sabh") (collectively hereinafter referred to as the "Defendants") to dismiss Paula Ellsworth's ("Ellsworth") complaint. For the following reasons, the motions are granted in part and denied in part.

## BACKGROUND

The Chicago Transit Authority ("CTA") hired URS to complete the CTA's Capital Improvement Program Management Project. In turn, URS hired Rodriguez, a disadvantaged and minority-owned business enterprise, as a subcontractor to perform certain consulting services as part of URS' contract with the CTA. Abou-Sabh, a male with Arab ancestry, was URS' project manager responsible for undertaking URS' responsibilities to the CTA, and, by virtue of URS' contractual relationship with Rodriguez, supervising Rodriguez's work pursuant to the subcontract. On October 15, 2001, URS and Rodriguez hired Ellsworth to undertake certain design and project management duties on the CTA contract for a base salary of $104,000 plus bonus. Ellsworth is a registered architect and an experienced project manager.

October 15, 2001, URS and Rodriguez hired Ellsworth to undertake certain design and project management duties on the CTA contract for a base salary of $104,000 plus bonus. Ellsworth is a registered architect and an experienced project manager.

In April 2002, Abou-Sabh promoted Maher Abu-Mallouh ("Abu-Mallouh"), who originally was hired as a scope writer or transportation planner, to the position of Design Deputy Program Manager. Abou-Sabh also promoted Augustine Angba ("Angba"), who originally was hired as a planning specialist, to the position of Design Deputy Program Manager. Then, in May 2002, Abou-Sabh promoted Fathi Damiri ("Damiri"), a foreign-born male of Arab ancestry, to the position of Senior Project Manager, and, on February 24, 2003, Robert Bushwaller ("Bushwaller") to the position of Chief Architect. Lastly, in July 2003, Abou-Sabh promoted Mansoor Shah ("Shah"), a foreign-born male of Arab ancestry who originally was hired as a project engineer, to the position of Senior Project Manager.

Ellsworth alleges that she was better qualified and had more experience than Abu-Mallouh, Angba, Damiri, and Bushwaller. Ellsworth further claims that she was assigned to correct significant mistakes made by Damiri on at least one project and that Bushwaller was not a registered architect as the position of Chief Architect required. Ellsworth also alleges that Abou-Sabh refused to promote her because she is an American-born Caucasian female and, instead, promoted less qualified foreign-born men of Arab ancestry.

On July 11, 2003, Ellsworth complained to Osvaldo Rodriguez, principal of Rodriguez, that the repeated refusal to promote her was discriminatory. On August 4, 2003, Ellsworth was given notice of her discharge effective as of August 15, 2003 and, when she inquired as to the reason for such action, was told that the Red Line Project she was working on was complete.

However, the Red Line Project was far from complete, and similarly situated male employees and foreign-born employees of Arab ancestry were not discharged. As of August, 27, 2003, defendants continued to show Ellsworth's position as available and, in fact, hired a white male to work as a project manager on the Red Line Project on August 8, 2003.

Following her discharge, Ellsworth attempted to secure alternative employment. She interviewed with Turner Construction ("Turner") for a position as assistant project manager. Turner found Ellsworth to be well-qualified for the position it was recruiting her for and was excited about the prospect of having Ellsworth join its team. However, the day after the principal of Turner met with Abou-Sabh, Turner withdrew its interest in Ellsworth without explanation. Abou-Sabh later informed Ellsworth that she would be offered a position on another project as construction project manager with no gap in service and at the same rate of pay, but Ellsworth did not receive the position even though she was qualified for it.

In July 2004, Ellsworth filed an amended eight-count complaint against defendants alleging discrimination on the basis of gender, race, and national origin. Specifically, Count I alleges a violation of 42 U.S.C. § 2000e-5 for discriminatory failure to promote Ellsworth on account of her gender. Count II alleges a violation of 42 U.S.C. § 2000e-5 for discriminatory failure to promote Ellsworth on account of her national origin. Count III alleges a violation of 42 U.S.C. § 1981 for intentional interference with Ellsworth's contractual relationship based on Ellsworth's ethnic background. Count IV alleges a violation of 42 U.S.C. § 2000e-5 for discriminatory discharge on account of Ellsworth's gender. Count V alleges a violation of 42 U.S.C. § 2000e-5 for discriminatory discharge based on Ellsworth's national origin and ethnic background. Count VI alleges a violation of 42 U.S.C. § 2000e-5 for discriminatory discharge

based on retaliation. Count VII alleges a conspiracy to deprive Ellsworth of employment and prospective economic advantage in violation of Illinois law; and Count VIII alleges tortious interference with a contractual relationship in violation of Illinois law.

Defendants have moved to dismiss various counts of the complaint pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

## DISCUSSION

Federal Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. PRO. 8(a)(2). In other words, Ellsworth need not set out in detail all the facts upon which her claims are based. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957). A complaint does not fail to state a claim upon which relief could be granted merely because it does not provide "a complete and convincing picture of the alleged wrongdoing." *Payton v. Rush*, 184 F.3d 623, 627 (7th Cir. 1999). All that is required of a plaintiff is to allege sufficient facts to allow this Court and the defendant to understand the gravamen of her complaint. *See id.*

Moreover, by bringing a Rule 12(b)(6) motion, defendants are, in essence, claiming that Ellsworth has no legal claim even if all of the alleged facts were taken as true. *Id.* Thus, the purpose of a motion to dismiss is not to decide the merits of the challenged claims but rather to test the sufficiency of the complaint under the applicable pleading standard. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). This Court will grant the motion only if it is impossible for Ellsworth to prevail under any set of facts that could be proven consistent with the allegations. *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

4

## I. Rodriguez's Motion to Dismiss

### A. Counts I, II, IV, V, and VI Are Applicable by Statute

Rodriguez contends that Counts I, II, IV, V, and VI of Ellsworth's amended complaint fail to state a claim upon which relief could be granted. Counts I, II, IV, V, and VI allege gender and national origin discrimination as well as discriminatory and retaliatory discharge based on gender and/or national origin in violation of 42 U.S.C. § 2000e-5. These claims are based on (1) an alleged pattern of discrimination by Rodriguez in which less qualified male employees were promoted to positions for which Ellsworth was qualified, (2) Rodriguez's discharge of Ellsworth purportedly because of the completion of the CTA Project when, at the same time, Rodriguez continued to show Ellsworth's position as available, (3) Rodriguez's failure to discharge any male employees because of the completion of the CTA Project, and (4) Rodriguez's discharge of Ellsworth after she complained that Rodriguez's failure to promote her was discriminatory.

Rodriguez argues that 42 U.S.C. 2000e-5 is inapplicable *ab initio* because Rodriguez did not employ 15 or more employees for twenty or more calendar weeks from October 15, 2001, the start date of Ellsworth's employment, to August 15, 2003, the effective date of her discharge. Rodriguez supports its argument with an affidavit from its principal officer, Osvaldo Rodriguez, containing the number of full-time and part-time employees retained by the company during the period of October 12, 2001 to December 31, 2002. In this affidavit, Rodriguez attests that it employed 15 or more employees for only one week in December 2002 and for eight weeks in 2003 between January 3, 2003 and August 29, 2003.

Title VII of the Civil Rights Act of 1964 (the "Act") states that "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual,

5

or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1) (2004). However, this restriction applies only to an employer that meets the statutory definition of the term "employer" at the time of the alleged violations. *Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 205 (1997). The Act defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar week in the current or preceding calendar year." 42 U.S.C. § 2000e(b) (2004).

In *Walters*, the United States Supreme Court defined "current or preceding calendar year" as referring to the year in which the acts of discrimination were committed as well as the preceding year. 519 U.S. at 205; *see also Komorowski v. Townline Mini-Mart,* 162 F.3d 962, 965 (7th Cir. 1998). The Supreme Court considered a claim under the Act for unlawful discharge in retaliation for the plaintiff's filing of a gender discrimination claim with the Equal Employment Opportunity Commission. *Walters*, 519 U.S. at 204. The plaintiff was discharged in 1990. *Id.* The Supreme Court reasoned that "current" and "preceding" calendar years applicable to the plaintiff's claim under the Act were 1990 and 1989 respectively. *Id.* at 205; *see also Komorowski*, 162 F.3d at 965 (noting that courts have consistently interpreted "current or preceding calendar year" to include the calendar year from January 1 through December 31).

In the case at bar, although Rodriguez's affidavit bears upon the question of its status as "employer," nothing beyond the four corners of the complaint is considered in determining the complaint's sufficiency at the pleading stage. *See Macchia v. Loyola Univ. Med. Ctr.*, No. 04 C 5049, 2004 WL 2392201, at *2 (E.D. Ill. Oct. 25, 2004). In her complaint, Ellsworth alleges that

she was discriminated against in 2002 and 2003. Thus, the relevant time frame for the determination of Rodriguez's status as "employer" under the Act is the entire calendar years of 2001 and 2002 for discriminatory acts alleged in 2002, and the entire calendar years of 2002 and 2003 for discriminatory acts alleged in 2003. There is nothing in the complaint that indicates that Ellsworth will not be able to establish such qualification. As such, the complaint is sufficient on its face to state that Rodriguez is an "employer" as such term is defined in the Act.

Even if Rodriguez's affidavit is considered, this conclusion would remain unchanged. Certainly, Ellsworth may be able to establish the Act's applicability to Rodriguez for unlawful conduct that occurred in 2002 if she can prove that Rodriguez employed 15 or more people in each working day of twenty weeks during January 1, 2001 to October 12, 2001. Similarly, she may also establish the Act's applicability to Rodriguez for unlawful conduct that occurred in 2003 if she can prove that Rodriguez employed 15 or more people in each working day of 12 weeks during August 29, 2003 to December 31, 2003, in addition to the eight weeks referenced in Rodriguez's response to Ellsworth's amended complaint.

Accordingly, Rodriguez's motion to dismiss Counts I, II, IV, V, and VI is denied.

B. Count III under 42 U.S.C. § 1981 Is Not Time-Barred

Rodriguez contends that Count III of Ellsworth's amended complaint is time-barred. Count III alleges intentional interference with Ellsworth's contractual relationship with Rodriguez in violation of 42 U.S.C. § 1981 ("§ 1981"). Rodriguez argues that such claim is barred because it was filed past the applicable statute-of-limitations. In support of this contention, Rodriguez relies upon *Hewitt v. Metro Water Reclamation Dist. of Greater Chicago*, No. 01 C 9218, 2002 WL 31176252, at *2 (N.D. Ill. Sept. 30, 2002), in which Judge

7

Leinenweber held that the applicable statute-of-limitations for § 1981 claims in federal court sitting in Illinois is Illinois' two-year statute-of-limitations for personal injury actions. Furthermore, Rodriguez argues that the statute-of-limitations' period is tolled from the time Ellsworth knew or should have known of her injury giving rise to the claim in Count III. Thus, since Ellsworth's complaint alleges that the first act of discrimination was in April 2002, Rodriguez asserts that Count III is time-barred because Ellsworth filed her original complaint in May 2004, more than two years after she purportedly knew or should have known of her injury.

Rodriguez's reliance on *Hewitt* is inapposite. *Hewitt* was decided before the Supreme Court's decision in *Jones v. R. R. Donnelley & Sons Co.*, 124 S. Ct. 1836 (2004), which addressed the very issue raised by Rodriguez's challenge. In *Jones*, the Supreme Court considered whether alleged violations of §1981 were governed by 28 U.S.C. § 1658(a) or by the personal injury statute-of-limitations of the forum state. *See* 28 U.S.C. § 1658(a) (2004) (stating that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1990] may not be commenced later than 4 years after the cause of action accrues"); *see also Jones*, 124 S. Ct. at 1839. The Court noted that the original version of § 1981, which provided for the right to make and enforce contracts, did not protect against harassing conduct that occurred *after* formation of the contract. *Jones*, 124 S.Ct. at 1840. However, the Court also noted that Congress amended § 1981 in 1991 to define the term "make and enforce contracts" to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* Thus, the Court reasoned that claims of harassment after the formation of a contract arose under Congress' 1991 amendment and thus fell squarely within the scope of 28 U.S.C. 1658(a). *See id.* Therefore, the

Court concluded that the applicable statute-of-limitations in such circumstances was four years. *Id.* at 1846.

In the case at bar, all of the discriminatory conduct alleged by Ellsworth occurred after formation of her employment contract. As such, Ellsworth's § 1981 claims in Count III arise under Congress' 1991 amendment to the statute. Therefore, the applicable statute-of-limitations to such claims is four years pursuant to the Supreme Court's pronouncements in *Jones*. Since Ellsworth's complaint was filed well within this four-year limitation, Rodriguez's motion to dismiss Count III is denied.

### C. Count III Alleges Sufficient Facts to Support a Claim Under 42 U.S.C. § 1981

Rodriguez also contends that Ellsworth fails to allege sufficient facts to support her claim under § 1981 because there is no actual loss of a contract interest as a result of the alleged discrimination. Rodriguez further contends that Ellsworth does not offer any instance of ethnic or racial discrimination in her complaint to sustain her claim under § 1981.

We disagree. The complaint speaks for itself. Ellsworth alleges, in varying details, that she had a contractual relationship with Rodriguez, was deprived of the benefit of this relationship when she was denied promotions on five specifically-detailed occasions on account of her race (Caucasian), and lost the benefit of this relationship when she was discharged as a result of the alleged discrimination. At the pleading stage, Rule 8(a) requires nothing more. Therefore, Rodriguez's motion to dismiss Count III is denied.

### D. Count VII States a Claim for Conspiracy Under Illinois Law

Rodriguez contends that Count VII fails to state a conspiracy claim because it fails to allege a tortious act in furtherance of the conspiracy and because principals and agents are

9

legally incapable of conspiring with one another. Count VII alleges civil conspiracy under Illinois law on the basis that Rodriguez conspired with Abou-Sabh and URS to terminate Ellsworth's employment and to prevent her from finding suitable alternative employment in Chicago. The complaint also alleges that Rodriguez and Abou-Sabh deceived Ellsworth into believing that she could be reassigned to a project manager position on another project when they had no intention to transfer her. Rodriguez argues that these allegations are insufficient to sustain a conspiracy claim or, alternatively, that no conspiracy could exist among Rodriguez, URS, and Abou-Sabh because they had a principal-agent relationship.

"A claim of civil conspiracy requires the plaintiff to prove that two or more people entered into an agreement to accomplish an unlawful purpose (or a lawful purpose by unlawful means), committed an overt act in furtherance of the agreement, and caused injury to another." *Snap-On Inc. v. Ortiz*, No. 96 C 2138, 1999 WL 592194, at *11 (N.D. Ill. Aug. 3, 1999); *see also Adcock v. Brakegate*, 645 N.E.2d 888, 894 (Ill. 1994). Unlike a criminal conspiracy, the gravamen of a civil conspiracy is not the agreement itself, but rather "the underlying tortious act performed in furtherance of it." *Snap-On*, 1999 WL 592194, at *11. Furthermore, "[t]o state a cause of action for conspiracy, a plaintiff must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character." *Adcock*, 645 N.E.2d at 894. However, by its very nature, the tortious or unlawful act does not permit the plaintiff "to allege, with complete particularity, all of the details of the conspiracy or the exact role of the defendants in the conspiracy." *Id.* at 895. In other words, a plaintiff cannot be required "to allege facts with precision where the necessary

information to do so is within the knowledge and control of the defendant and unknown to the plaintiff." *Id.*

Under federal pleading rules, there is no requirement to plead the facts or elements of a claim, except for the requirement of Rule 9 which is inapplicable to this case. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). To sustain a conspiracy claim in the pleading stage, it is sufficient merely to indicate (1) the parties to the conspiracy, (2) the conspiracy's general purpose, and (3) the approximate date of the events alleged so that the defendants have notice of the claim against them. *See id.* (applying federal pleading requirements to a conspiracy claim under Wisconsin law); *see also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Ellsworth alleges that, in August 2003, Rodriguez, URS, and Abou-Sabh conspired to terminate her employment and that the conspiracy was motivated by an unlawful discriminatory purpose based on her race, gender, and/or ethnic status. Ellsworth further alleges that Rodriguez and Abou-Sabh took overt steps in furtherance of this conspiracy by fabricating a false reason for her discharge and by promising Ellsworth reassignment to another project without intending to carry it out. Accordingly, Ellsworth has provided sufficient information to sustain her claim at this stage. Thus, Rodriguez's motion to dismiss Count VII is denied.

    E. Count VIII States a Claim for Tortious Interference Under Illinois Law

Rodriguez contends that Count VIII should be dismissed because Ellsworth does not allege interference by a third party and has not alleged a breach of contract. In Count VIII, Ellsworth alleges that URS and Abou-Sabh tortiously interfered with Ellsworth's contractual relationship with Rodriguez. Ellsworth further alleges that she was employed by URS and Rodriguez and that Abou-Sabh is an agent of URS.

11

Under Illinois law, the required elements of a claim of tortious interference with a contract are "(1) a valid contract, (2) defendant's knowledge of the existence of the contract, (3) defendant's intentional and malicious inducement of the breach of the contract, (4) breach of contract caused by defendant's wrongful conduct, and (5) resultant damage to the plaintiff." *Fuller v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330 (7th Cir. 1983). As a threshold matter, Illinois law requires that the contract exists between the plaintiff and a third party other than the defendant. *Emery v. Northeast Ill. Reg'l Commuter R.R. Corp.*, No. 02 C 9303, 2003 WL 22176077, at *8 (N.D. Ill. Sept. 18, 2003). In other words, a party or its agent cannot tortiously interfere with its own business relationships. *Id.* at *9. However, under certain circumstances, an agent who acts in his or her own personal interest and contrary to the interest of the principal may be deemed a third party, and, as such, can be liable for tortiously interfering in the contractual relationship between the plaintiff and the principal. *See id.*

In this case, Ellsworth alleges interference with her contractual relationship with Rodriguez. While the complaint is unclear as to whether Ellsworth was employed by Rodriguez alone or by both Rodriguez and URS, it is clear that Rodriguez is part of the employment relationship in either scenario. Furthermore, Ellsworth does not allege that she was employed solely by URS and that Rodriguez was acting as URS' agent. Thus, under Illinois law, Rodriguez could not have tortiously interfered in its own business relationship. Therefore, Rodriguez's motion to dismiss Count VIII is granted.

F.  The Court Has Jurisdiction over Counts VII and VIII

Rodriguez finally contends that this Court is without jurisdiction to hear the state law claims in Counts VII and VIII if its motion to dismiss Counts I through VI, which present federal questions upon which this Court's jurisdiction is based, is granted. As discussed above, Rodriguez's motion to dismiss as to Counts I through VI is denied. Thus, this Court has pendent jurisdiction over Counts VII and VIII. *See* 28 U.S.C. § 1367(c)(3) (2004). Therefore, Rodriguez's motion to dismiss Counts VII and VIII is denied.

## II. Abou-Sabh's Motion to Dismiss

### A.  There Is No Individual Liability for Counts I, II, IV, V and VI

Abou-Sabh contends that Counts I, II, IV, V, and VI should be dismissed because the Civil Rights Act of 1964 does not impose individual liability on supervisors for alleged acts of discrimination. As discussed in I.A. above, the Act imposes liability on employers that employ 15 or more employees for twenty calendar weeks in the year in which a prohibited act occurs or in the preceding year. In her complaint, Ellsworth alleges only that Abou-Sabh was her supervisor and an agent of URS. However, she does not allege any facts to suggest that Abou-Sabh is an "employer" under the Act. Thus, the Act does not apply to Abou-Sabh, a conclusion that even Ellsworth concedes. Accordingly, Abou-Sabh's motion to dismiss Counts I, II, IV, V, and VI is granted.

### B.  Count III States a Claim Under 42 U.S.C. §1981

Abou-Sabh argues that Count III fails to state sufficient facts to establish that Ellsworth's claim is cognizable under § 1981. Abou-Sabh rests his argument on the fact that Ellsworth pled only that she was discriminated against because she is an American-born Caucasian. While

13

acknowledging that § 1981 applies equally to Caucasians as to members of racial minorities, Abou-Sabh argues that Ellsworth's allegations that she was refused promotions in favor of Arab men raises a claim of discrimination based only on gender and/or national origin. Noting that the Seventh Circuit in *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984), held that claims under § 1981 were actionable only if they arose as a result of racial animus, Abou-Sabh urges that Ellsworth's claim is insufficient.

Any traction that Abou-Sabh's argument may have is foreclosed by the Supreme Court's decision in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987). In *Saint Francis*, the Supreme Court considered whether a claim by an Iraqi-born American citizen alleging racial discrimination is cognizable under § 1981. 481 U.S. at 606. The Court reasoned that, based on legislative history, § 1981 is "intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Id.* at 613. Thus, the Court concluded that if the plaintiff is able to prove that he was intentionally discriminated against because he was born an Arab, "rather than solely on the place or nation of his origin, he will have made out a case under § 1981." *Id.*

It is unclear from the complaint whether Ellsworth is alleging discrimination on the basis of her nationality, place of origin, or race to support her § 1981 claim. While Ellsworth alleges that Abou-Sabh's discriminatory conduct was motivated by the fact that she is an *American-born* Caucasian, almost all occasions of such discrimination cited by Ellsworth seem to involve *foreign-born male* Caucasians. Thus, one can reasonably conclude that Ellsworth's allegations are based on gender, nationality, and/or place of origin. On the other hand, the allegations could be interpreted as claiming discrimination on the basis that Ellsworth is not of Arab ancestry, the

14

reverse of what the Supreme Court found actionable in *Saint Francis*. In other words, if discrimination against a person because he is of Arab ancestry is actionable under § 1981, it follows *a fortiori* that discrimination against a person because she is *not* of Arab ancestry would also be actionable. This is sufficient to sustain Count III at the pleading stage. Therefore, Abou-Sabh's motion to dismiss Count III is denied. However, the Court would be amenable to revisiting this issue on a motion for summary judgment if Ellsworth is unable to prove that Abou-Sabh's action was motivated by race and not solely by Ellsworth's gender, nationality, and/or place of origin.

C. The Court Has Jurisdiction over Counts VII and VIII

For the same reason that Rodriguez's jurisdictional challenge is denied (see I.F. above), Abou-Sabh's motion to dismiss Counts VII and VIII on jurisdictional grounds is denied

### III. URS' Motion to Dismiss

A. Count III is Not Time-Barred And Alleges Sufficient Facts to State a Claim under 42 U.S.C. § 1981

URS adopts Rodriguez's argument that Count III is time-barred and should be dismissed. For the same reasons that Rodriguez's challenge was denied (see I.B. above), URS' motion to dismiss Count III is denied.

URS also adopts Rodriguez's argument that Count III fails to state a claim upon which relief could be granted because there is no actual loss of a contractual interest or instances of discriminatory conduct against Ellsworth. For the same reasons that Rodriguez's challenge is denied (see I.C. above), URS' motion is denied.

15

Finally, URS adopts Abou-Sabh's argument that Count III should be dismissed because Ellsworth fails to allege sufficient facts to establish that she was discriminated against on the basis of her race. For the same reasons that Abou-Sabh's challenge is denied (see II.B. above), URS' motion to dismiss Count III is denied.

### B. Count VII States a Claim for Conspiracy Under Illinois Law

URS adopts Rodriguez's argument that Count VII fails to state a conspiracy claim because Ellsworth fails to allege a tortious act in furtherance of the conspiracy and because principals and agents are legally incapable of conspiring with one another. For the same reasons that Rodriguez's challenge is denied (see I.D. above), URS' motion is denied.

### C. Count VIII States A Claim For Tortious Interference with Contract

URS adopts Rodriguez's argument that Count VIII fails to state a claim for tortious interference with contract. As discussed in I.E. above, a claim for tortious interference under Illinois law requires the existence of a contract between the plaintiff and a third party. Ellsworth claims that Rodriguez and URS interfered with her employment contract. However, it is unclear whether Ellsworth was employed by Rodriguez alone or by both Rodriguez and URS. If Ellsworth was employed by Rodriguez alone, then it is possible for URS to have tortiously interfered with this contractual relationship under Illinois law. As such, it is possible for Ellsworth to state a claim against URS for tortious interference. Therefore, URS' motion to dismiss Count VIII is denied.

## CONCLUSION

For the foregoing reasons, Rodriguez's motion to dismiss Counts I, II, III, IV, V, and VII is denied, and its motion to dismiss Count VIII is granted. Abou-Sabh's motion to dismiss Counts I, II, IV, V, and VI is granted, and his motion to dismiss Counts III, VII, and VIII is denied. URS' motion to dismiss Counts III, VII, and VIII is denied.

Wayne R. Andersen
United States District Judge

Dated: March 11, 2005