**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAULA ELLSWORTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 04 C 3499** |
| **v.** | ) | |
| | ) | **Judge Wayne R. Andersen** |
| **URS CONSTRUCTION SERVICES, RODRIGUEZ & ASSOCIATES, and SHARIF ABOU-SABH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on defendants URS Construction Services, Rodriguez & Associates and Sharif Abou-Sabh's motions for summary judgment [219, 223, 227]. For the following reasons, the motions are granted.

## BACKGROUND

After plaintiff Paula Ellsworth's was fired from her job as a project manager on the Chicago Transit Authority's ("CTA") five-year Capital Improvement Project ("CIP"), she filed this lawsuit. In June 2000, the CTA hired O'Brien Kreitzberg, a division of URS Construction Services ("URS"), to provide project management services for the CIP. In turn, URS hired Rodriguez & Associates ("Rodriguez") as a subcontractor to perform certain consulting services as part of URS's contract with the CTA. Sharif Abou-Sabh ("Abou-Sabh") was URS's project manager responsible for overseeing the company's responsibilities to the CTA, and by virtue of URS's contractual relationship with Rodriguez, Abou-Sabh also was responsible for supervising Rodriguez's work pursuant to the subcontract.

In early fall of 2000, Abou-Sabh became acquainted with Ellsworth on the bus while they commuted to work. Ellsworth, an architect, expressed interest to Abou-Sabh about working on the CIP, but Abou-Sabh was unable to hire Ellsworth to work for URS because of budgetary constriants. However, Abou-Sabh recommended to Rodriguez that he hire Ellsworth to work on the CIP as part of the sub-contractor's team. Rodriguez hired Ellsworth as a project manager on October 15, 2001. With the approval of the CTA, Ellsworth was assigned to two separate CIP projects, the Front Door Program and the Art in Transit Program. At some later point, Ellsworth requested and received approval to withdraw from the Front Door Program.

As one of of his duties, Abou-Sabh participated in annual budget negotiations with the CTA, known as Annual Service Orders ("ASO"). In July 2003, negotiations began on the fourth ASO. During these negotiations, the CTA secured a commitment from URS that it and its subcontractors would reduce the number of staff assigned to the CIP. The CTA requested that Abou-Sabh propose which staff members should be removed, and with CTA approval, those employees would be removed from the CIP. Ellsworth was one of the individuals Abou-Sabh proposed should be cut from the CIP.

While Ellsworth was working on the CIP, Abou-Sabh promoted several employees. This upset Ellsworth because she believed that she was better qualified than those who received the promotions. However, Ellsworth never applied for a promotion, nor was she aware of any promotion opportunities until after URS officially announced a promotion to those working on the CIP. In mid-to-late July 2003, Ellsworth complained to Kim Nelson-Jones, the Human Resources representative on the CIP, that she believed Abou-Sabh did not promote her because she was female and because of her race. Ellsworth is Caucasian, and Abou-Sabh is Arabic.

Nelson-Jones told Ellsworth that she should speak with Rodriguez and that Nelson-Jones would talk to Mike Just about her complaint. Ellsworth did not complain to Abou-Sabh.

Ellsworth states that she complained to Osvaldo Rodriguez, principal of Rodriguez, on July 11, 2003. She asserts that she told Rodriguez that Abou-Sabh was discriminating against her, which resulted in Abou-Sabh passing her over for various promotion opportunities for which she believed she was better qualified for than those individuals who were promoted. Rodriguez denies that this conversation occurred. Ellsworth claims that Rodriguez told her that he would discuss her complaint with Mike Just, a URS employee, and ask him to talk to Abou-Sabh. Ellsworth alleges that Rodriguez talked to Just about her complaint. Rodriguez denies ever discussing her allegations with Just.

On August 4, 2003, Rodriguez informed Ellsworth that she was one of the CIP staff members the CTA removed from the project and that it was going to terminate her employment relationship with the firm on August 15, 2003. Following her discharge, Ellsworth attempted to secure alternative employment, but she was not able to secure a position that she believed to be appropriate for a person with her qualifications. Ellsworth interviewed with a few companies, but believes that, when they contacted Abou-Sabh, he told them not to hire her.

On May 19, 2004, Ellsworth filed this lawsuit against defendants alleging discrimination on the basis of gender, race, and national origin. Ellsworth later filed an amended complaint which contains the following claims: (1) Count I alleges a violation of 42 U.S.C. §2000e-5 for discriminatory failure to promote on account of her gender; (2) Count II alleges a violation of 42 U.S.C. §2000e-5 for discriminatory failure to promote on account of her national origin; (3) Count III alleges a violation of 42 U.S.C. §1981 for intentional interference with contractual

relationship based on Ellsworth's ethnic background; (4) Count IV alleges a violation of 42 U.S.C. §2000e-5 for discriminatory discharge on account of Ellsworth's gender; (5) Count V alleges a violation of 42 U.S.C. §2000e-5 for discriminatory discharge based on national origin and ethnic background; (6) Count VI alleges a violation of 42 U.S.C. § 2000e-5 for discriminatory discharge based on retaliation; (7) Count VII alleges a conspiracy to deprive Ellsworth of employment and prospective economic advantage in violation of Illinois law; and (8) Count VIII alleges tortious interference with a contractual relationship in violation of Illinois law.

On March 11,2005, this court dismissed Count VIII against Rodriguez and Counts I, II, IV, V and VI aganst Abou-Sabh. On September 22, 2006, this court also granted Rodriguez's motion for partial summary judgment on Counts I, II, IV, V and VI. Therefore, all counts are pending against URS. Counts III, VII and VIII are pending against Abou-Sabh, and Counts III and VIII are pending against Rodriguez.

## DISCUSSION

### I. Ellsworth's Response to Defendants' Motions for Summary Judgment

Ellsworth failed to comply with this court's local rule governing summary judgment motions, LOCAL RULE 56.1, in at least three ways. First, Local Rule 56.1 is quite clear that "[a]bsent prior leave of Court, a respondent to a summary judgment motion shall not file more than 40 separately-numbered statements of additional facts." L.R. 56.1(3)(C). Ellsworth's Statement of Material Facts contains forty-eight separately-numbered statements. This court is generous about granting parties leave to file statements of fact that are longer when the need arises and would have given plaintiff leave to exceed the number of statements permitted under

the Local Rules. Second, it is improper for a party to merely combine what should be separately-numbered statements into one long statement so as to undermine the purpose of the rule. As identified in this court's management procedures, each individual statement shall be limited to the recitation of a single fact and not exceed four sentences in length. Ellsworth's Statement of Facts makes a mockery of this rule. For example, paragraph 3 is three and a half pages, consisting of no less than thirty-six separate statements of fact.

Finally, Ellsworth's response briefs in opposition to the summary judgment motions inadequately cite the record, therefore making it more difficult for the court to determine which statements are supported by appropriate evidence and what, if any, material facts are disputed. The Seventh Circuit has made clear that "it is not the duty of the district court to scour the record in search of material factual disputes." *Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 664 (7th Cir. 2005). "Judges are not like pigs, hunting for truffles buried in the record." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Not only does this waste the resources of the court, it also unfairly burdens opposing parties and unjustly increases litigation costs. While the court could rightly strike Ellsworth's Statement of Material Facts and response briefs, we have reviewed all of the materials submited in their entirety and grant defendants' motions on the merits.

**II. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any of the material facts in that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all the evidence and any reasonable

inferences there from in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[i]f the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996). "The plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment. . . . Instead, [the plaintiff] must supply the evidence to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001).

**III. URS and Abou-Sabh's Motions for Summary Judgment**

*A. Ellsworth Cannot State Claims Under Title VII or Section 1981*

In Counts I through VI, Ellsworth alleges discrimination and intentional interference with her employment for failure to promote, discriminatory discharge and retaliation in violation of 42 U.S.C. §2000(e)(5) ("Title VII") and 42 U.S.C. § 1981. All six counts are pending against URS, and Count III is pending against Abou-Sabh. To maintain a Title VII claim against URS, Ellsworth must prove that she had an employment relationship with URS. *Alexander v. Rush North Shore Med. Ctr*, 101 F.3d 487, 492 (7th Cir. 1996). Similarly, section 1981 claims are not cognizable unless there is a contractual relationship between the parties. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 392 (1982). This court previously held that Rodriguez and URS are separate and distinct entities, and there is no evidence that URS and Rodriguez are joint employers or a single employer. *See Ellsworth v. URS Constr. Servs.*, 2006 U.S. Dist. LEXIS 68404, at *11-12 (N.D. Ill. Sept. 26, 2006). Moreover, the record demonstrates, and Ellsworth admits, that she was employed by Rodriguez and was not an

employee of URS. In light of her admission that she was employed by Rodriguez and not URS, and the lack of any evidence that URS had any form of contractual relationship with Ellsworth, all of her claims under Title VII and section 1981 against URS and its agent, Abou-Sabh, fail as a matter of law.

In their briefs, URS, Abou-Sabh and Ellsworth each address alternative arguments assuming Ellsworth's claims could survive the threshold issue of whether she was employed or had a contractual relationship with URS. Even if Ellsworth could demonstrate she was employed by URS, she cannot maintain claims for discrimination and intentional interference with her employment for failure to promote, discriminatory discharge and retaliation in violation of Title VII and section 1981.

1. Ellsworth's Failure to Promote Claims

In order to survive a summary judgment motion on a failure to promote claim, a plaintiff is required to establish that she was rejected for the position at issue. *Ghosh v. Ind. Dep't of Envtl. Mgmt.*, 192 F.3d 1087, 1091 (7th Cir. 1999); *see also Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003) (holding that a plaintiff must show that she applied for and was rejected for the promotion to establish a prima facie case for her failure to promote claim). Ellsworth alleges that she was denied promotions to the positions of Design Deputy Program Manager, Senior Project Manager, and Chief Architect. However, Ellsworth provides no evidence that URS ever rejected her for promotion to any of these positions. She never applied for a single promotion, nor did she indicate that she desired a promotion to any URS employee that had the authority to promote her. Furthermore, Ellsworth does not claim that there was any URS policy or employment contract that required URS to either promote her or consider her for promotion.

In fact, Ellsworth's own Statement of Material Facts states that she did not know that any of the five positions to which she claims she should have been promoted were even available until after they were filled. She admits that there were no postings, published position descriptions, applications or interviews for these positions.

Ellsworth argues that in order to establish a prima facie case, she need only show that she would have accepted an offer of promotion had URS offered her one, citing *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, (7th Cir. 1994). In *Loyd*, the court found that the plaintiff had established a prima facie case even though the plaintiff never applied for a promotion, and thus never rejected. *Id.* at 522-23. However, two essential differences exist between the facts in *Loyd* and the facts in the present case. First, in *Loyd*, the defendant corporation had an established policy to determine who was eligible for promotion (it promoted employees based on seniority), and the corporation deviated from this policy with respect to the plaintiff. *Id.* at 523. In the present case, Ellsworth provides no evidence that URS had any policy that stipulated who was eligible for promotion. Second, in *Loyd,* the plaintiff was able to establish that male employees did not approach the company seeking promotion, and therefore the court held that it was wrong to require the plaintiff to have to apply for a promotion. *Id.* at 522. This is distinguishable from the present case because Ellsworth both admits that she is unaware of any promotion policy and she presents no evidence as to whether URS even had a promotion policy.

Furthermore, she presents no evidence as to whether the employees who received promotions from URS requested, formally or informally, to be considered for the promotions they received. Therefore, without any proof that Ellsworth was denied a promotion, this court

need not explore the motives of URS employees or if Ellsworth was better qualified than the individuals who received promotions. Therefore, Counts I and II fail as a matter of law.

2. Ellsworth's Discriminatory Termination Claims

In order for a plaintiff to survive a summary judgment motion on a discriminatory termination claim, the plaintiff must "present[] either direct or indirect evidence showing discriminatory intent by the defendant or its agents." *Ballance v. City of Springfield*, 424 F. 3d 614, 617 (7th Cir. 2005). Given that Ellsworth does not present any direct evidence proving that URS or its agents possessed the requisite intent to discriminate, she must rely on indirect evidence to maintain her claims. *Id.* To do this, a plaintiff typically must show: (1) she was a member of a protected class; (2) she met her employer's legitimate performance expectations; (3) she suffered adverse employment action; and (4) she was treated less favorably than similarly situated individuals who are not members of plaintiff's protected class. *Id.* Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to provide evidence that indicates its adverse actions were not discriminatory. *McDonald Douglas v. Green*, 411 U.S. 792, 802 (1973). If the defendant presents such evidence, the burden then shifts back to the plaintiff to show that the evidence was pretextual. *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005).

In this case, this burden shifting analysis applies to Ellsworth's Title VII claim because she is female, which is a protected class. *Id.* However, even if Ellsworth is able to establish a prima facie case against URS, she does not present sufficient evidence to rebut URS's evidence that her discharge from the CIP project was due to the CTA's decision to reduce the CIP personnel budget, and not for discriminatory reasons. In Ellsworth's response to defendants'

Local Rule 56.1 (a)(3) Joint Statement of Undisputed Facts, she attempts to rebut defendants' assertion that she was removed from the CIP due to CTA budget-mandated staff reductions by citing an interoffice memo written November 11, 2003. This memo, written by a URS employee, indicates that the first proposal for the fourth ASO was submitted to the CTA on July 15, 2003 and Ellsworth's name was not on this proposed list of employees for the CTA to approve for removal. The memo also indicates that the first meeting to negotiate reductions in URS personnel budget was held on September 25th. Ellsworth was discharged by Rodriguez on August 4th, between the time the proposal was submitted, but prior to the first meeting.

Ellsworth asks this court to view this document as sufficient evidence that URS's claim is pretextual, arguing that because her name is not on this list, she must not have been terminated pursuant to the budget cuts. However, even if we draw all reasonable inferences in light most favorable to Ellsworth, this evidence still falls short of meeting her burden. Ellsworth provides no evidence that the employees identified on this list were the only people URS proposed to the CTA for removal from the CIP, nor does the memo indicate that these employees were the employees who actually were cut from the project as a result of the budget cutbacks. In order for this court to find this document sufficient evidence to create a material issue of fact as to whether URS's explanation of why Ellsworth's work on the CIP was terminated is pretextual, she would have to demonstrate that this list was the definitive and entire list of employees who were fired due to the budget cuts, and she did not do this. Therefore, Ellsworth's Title VII claim must fail.

While this burden shifting analysis is appropriately applied to Ellsworth's Title VII claim, this court must use a modified test to determine if her section 1981 claim can survive URS's motion for summary judgment because she is Caucasian, and therefore not a member of a

protected racial minority. *Ballance v. Sprigfield,* 424 F3d at 617. "[T]he plaintiff in a reverse-discrimination case must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites [or men] or evidence that there is something 'fishy' about the facts at hand." *Nowak v. Int'l Truck and Engine Corp.*, 406 F. Supp. 2d 954, 965 (N.D. Ill. 2005) (citing *Phelan v. City of Chi.*, 347 F.3d 679, 684 (7th Cir. 2003)).

Ellsworth has not met her burden by providing clear and convincing evidence that URS had reason or inclination to discriminate against Caucasians. Nor does she provide sufficient evidence that there was something "fishy" about the facts that led to her discharge. First, Ellsworth's own admissions undermine her assertion that Abou-Sabh's had a pattern of favoring non-Caucasians and that this pattern demonstrated that something actionable occurred. Ellsworth attempts to rebut URS's asserted reasons for discharging her by offering evidence of fifteen employees for comparators in an attempt to show that she was in fact discriminated against. Ellsworth admits that of the fifteen comparators named, at least four who were promoted were Caucasian. She admits that Jason Scheidel, Robert Bushwaller II, David Mussa, and Christopher Bohman received promotions even though they are Caucasian. Furthermore, Ellsworth admits that the individual who purportedly assumed her responsibilities after she was removed from the CIP project was also Caucasian. It appears disingenuous of Ellsworth to use the employment history of these individuals to support her Title VII claims and then to pretend that this evidence does not exist when accusing URS of violating section 1981.

Second, Ellsworth provides no reasons why Abou-Sabh would have reason or inclination to discriminate against Caucasians. While Ellsworth's Statement of Facts indicate that particular

individuals of Arabic descent were not disciplined for behavior that she asserts was inappropriate and many employees spoke Arabic in the workplace, this evidence does not meet the heightened burden a plaintiff has in a reverse discrimination case because it is not only circumstantial, but it does not evidence a reason as to why Abou-Sabh would have reason to discriminate against Caucasians.

Lastly, just like Ellsworth's Title VII claim, even if she can satisfy the other prima facie requirements, she does not provide sufficient evidence that shows URS's explanation of why she was removed from the CIP was pretextual. Therefore, URS prevails on Counts IV and V as a matter of law.

*B. Ellsworth's Retaliatory Termination Claim*

In order for a retaliatory termination claim to survive a summary judgment motion, a plaintiff must prove a prima facie case of retaliation by showing that "(1) [she] engaged in statutorily protected expression; (2) [she] suffered an adverse action by the employer; and (3) there was a causal link between the protected expression and the adverse action." *Scallon v. Bank of Montreal*, 2000 WL 152133, *9 (N.D. Ill. 2000). Ellsworth cannot establish a prima facie case. As previously discussed, Ellsworth admits that Rodriguez was her employer, not URS. But even if URS were her employer, she has not shown there was a causal link between her complaints to Nelson-Jones and her alleged complaint to Rodriguez. Ellsworth admits that Abou-Sabh made the decision to remove her from the CIP, yet she provides no evidence demonstrating that he knew of her complaints when he made his decision to end her work on the CIP. Therefore, Ellsworth cannot prevail on Count VI with respect to URS.

*C. Conspiracy to Deprive Ellsworth of Employment and Prospective Economic Advantage*

Ellsworth alleges that URS, through its agent Abou-Sabh, and Rodriguez entered into an agreement to discharge her because she had complained about Abou-Sabh's alleged discriminatory treatment and to create a false reason for firing her. Furthermore, Ellsworth alleges that URS and Rodriguez also agreed to make sure that she did not secure replacement employment in Chicago and that Abou-Sabh interfered with her attempts to secure employment with other employers after her employment relationship ended with URS.

In order to maintain a conspiracy claim, Ellsworth must prove two elements. *See Snap-On, Inc. v. Ortiz*, 1999 WL 754819, *1 (N.D. Ill. 1999). First, a plaintiff must prove that there is an agreement between two or more people. *Id.* Second, the act that the parties agree to commit must be unlawful. *Id.* Ellsworth cannot satisfy either element. Ellsworth provides no evidence that indicates that Abou-Sabh communicated any information to Rodriguez about her removal from the CIP other than the CTA's demand that URS reduce the CIP staff. Furthermore, even if she is correct, and Abou-Sabh did inform Rodriguez that URS no longer would use Ellsworth's services on the CIP for reasons other than the budget cutbacks, she does not provide any evidence Abou-Sabh and Rodriguez agreed that she be discharged from her employment at Rodriguez. Ellsworth's rationale that termination from the CIP ended her employment with Rodriguez is flawed because her work on the CIP did not preclude Rodriguez from reassigning Ellsworth to another position or assignment. The fact that Rodriguez decided to end their employment relationship is not sufficient in and of itself to support this claim.

Lastly, Ellsworth alleges that Abou-Sabh intentionally interfered with her attempts to secure employment with other employers after she was removed from the CIP and her

employment relationship with Rodriguez ended. However, as previously mentioned, in order to maintain a cause of action for conspiracy, Ellsworth, at the very least, must provide evidence of an agreement to commit an unlawful act between two or more people. *Id.* Ellsworth's allegation is deficient on its face because she never alleges Abou-Sabh conspired with anybody to interfere with her attempts to secure employment with other employers. Ellsworth puts forth a theory that the head of Turner Construction, who she contends was going to hire her until she met with CIP staff members, must not have offered her the job because Abou-Sabh told him not to. Ellsworth insists that this is sufficient circumstantial evidence of tortious interference with prospective economic advantage. First, even if this all is true, Ellsworth never alleges Abou-Sabh agreed to commit any act in an effort to deny Ellsworth of employment. Even if Abou-Sabh did say something to Turner Construction in an effort to prevent the company from hiring Ellsworth, this would not be a conspiracy because she did not allege Abou-Sabh made an agreement with anybody. Furthermore, Ellsworth has no evidence that Abou-Sabh said anything at all to Turner Construction that resulted in its decision not to hire her.

It appears that the allegation that Abou-Sabh interfered with Ellsworth's attempts to secure employment with Turner Construction is more appropriately brought as a tortious interference claim. But even if the court were to allow Ellsworth to recast this allegation as a tortious interference claim, the burden would still be on the Ellsworth to prove all essential elements of the claim for a cause of action to survive a summary judgment motion. *Ortiz*, 94 F.3d at 1124. Therefore, without any evidence of what was discussed in the meeting between URS employees and Turner Construction, or any proof of a causal link between URS's actions

and Turner Construction's decision not to hire Ellsworth, this court cannot let her proceed to trial on her theory. Therefore, Count VII cannot be maintained against URS or Abou-Sabh.

*D. Ellsworth's Tortious Interference With Contract Claim*

The final count pending against URS and Abou-Sabh is Count VIII, Ellsworth's tortious interference with contract claim. Ellsworth alleges that Abou-Sabh intentionally interfered with her contractual relationship with both URS and Rodriguez by causing Ellsworth to be denied promotions to which her contractual relationship of employment entitled her and that this interference led to her discharge. In order to prevail on a tortious interference with contract claim, the threshold issue that a plaintiff must first establish is "the existence of a valid and enforceable contract between [her] and another." *Fieldcrest Builders v. Antonucci*, 311 Ill. App. 3d 597, 611; 724 N.E.2d 49, 60 (1st Dist. Ill. 1999). As previously discussed, Ellsworth presents no evidence of a contract between her and URS, and she admits that Rodriguez was her employer, not URS. Therefore, it is impossible for Abou-Sabh to interfere with a URS contract that never existed. Therefore, the only way Ellsworth can prevail on her tortious interference with contract claim is if she proves that Abou-Sabh tortuously interfered with her contract with Rodriguez.

Ellsworth first asserts that Abou-Sabh interfered with her contractual relationship with Rodriguez because she had an implicit right to promotion. However, Illinois law does not recognize an implicit right to promotion. *See U.S. v. City of Chicago*, 869 F.2d 1033, 1036 (7th Cir. 1989) ("Illinois law does not create an entitlement to promotion."); *See also Bigby v. City of Chicago*, 766 F.2d 1053 (7th Cir. 1985) ("To have a property interest… a person… must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement

to it."). Absent contractual provisions in the employment agreement between Ellsworth and Rodriguez that stipulated she was entitled to a promotion, Ellsworth cannot maintain a claim that Abou-Sabh interfered with her right to a promotion.

As for the allegation that Abou-Sabh interfered with Ellsworth's employment contract with Rodriguez resulting in Rodriguez ending her employment, she must prove "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship between the plaintiff and another; (3) the defendant's intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by the defendant's wrongful acts; and (5) damage to the plaintiff." *Grund v. Donegan*, 298 Ill. App.3d 1034, 1038 (1998); *Rav Dancer, Inc. v. DMC Corp.*, 230 Ill. App.3d 40, 48 (1992).

Ellsworth cannot prevail on this claim as a matter of law. First, Ellsworth provides no evidence that it was Abou-Sabh's intention to cause Rodriguez to end her employment. While Abou-Sabh did not allow Ellsworth to continue to work on the CIP project, she was Rodriguez's employee and as such, Rodriguez could have reassigned her to another project. There is no evidence to even suggest that Abou-Sabh had any intent to cause Rodriguez to choose to discharge her instead of reassigning her to another position or assignment. Second, even if Abou-Sabh did intend for Rodriguez to fire Ellsworth, the record contains no evidence of what acts Abou-Sabh committed to induce an alleged breach of a contract or how such acts were unlawful. While this court must view the evidence and make reasonable inferences in the light most favorable to Ellsworth (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248), this court cannot engage in pure speculation as to how defendants may have wronged her. *Ortiz v. John O. Butler*

*Co.*, 94 F.3d at 1124. Therefore, Count VIII must be dismissed with respect to URS and Abou-Sabh.

**IV. Rodriguez's Motion for Summary Judgment**

Counts III and VII are pending against Rodriguez. Count III alleges that Rodriguez deprived Ellsworth of her contractual relationship based on her race in violation of 42 U.S.C. § 1981. Count VII alleges Rodriguez conspired with URS and Abou-Sabh to deprive her of employment.

*A. Ellsworth's Intentional Interference with Contract Claim*

In Count III, Ellsworth alleges that Abou-Sabh intentionally interfered with her contractual relationship with URS and Rodriguez. As previously discussed, in order to maintain a section 1981 claim, a plaintiff must prove: (1) plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) the discrimination concerned the making and enforcing of a contract. *Morris v. Office Mac, Inc.*, 89 F. 3d 411, 413 (7th Cir. 1996). In this case, it is not disputed that Ellsworth is not a member of a racial minority, and as such, reverse discrimination requires additional evidence that an employer had some reason or inclination to discriminate against the majority class. *Mills v. Health Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). However, Ellsworth admits that Rodriguez never discriminated against her. Therefore, there is no material fact that is in dispute with regard to this claim, and Rodriguez is entitled to judgment as a matter of law on Count III.

*B. Conspiracy to Deprive Ellsworth of Employment and Prospective Economic Advantage*

The other cause of action still pending against Rodriguez is Count VII. Ellsworth alleges that Rodriguez entered into an agreement with Abou-Sabh to discharge her because she had complained about Abou-Sabh's alleged discriminatory treatment and to create a false reason for firing her. Furthermore, Ellsworth alleges that these two parties also agreed to make sure that she did not secure replacement employment in Chicago.

As previously discussed, in order to maintain a conspiracy claim, Ellsworth must prove that there is an agreement between two or more people and that the act that the parties agree to commit was unlawful. *See Snap-On, Inc. v. Ortiz*, 1999 WL 754819, *1. One cannot maintain a conspiracy claim against a defendant unless the underlying act itself is unlawful. *Galinski v. Kessler*, Ill.App.3d 602, 606 (1985). Ellsworth cannot prevail as a matter of law on her claim. First, Ellsworth provides no evidence that there was any agreement made between Rodriguez and Abou-Sabh to discharge her. Ellsworth's only evidence is that Abou-Sabh told Rodriguez that she had been removed from the CIP. Furthermore, Ellsworth admits that Rodriguez did not discriminate against her. Therefore, Rodriguez did not commit any underlying tort to support the conspiracy claim. Therefore, summary judgment on Count VII must be granted.

## CONCLUSION

Accordingly, defendants URS Construction Services, Rodriguez & Associates and Sharif Abou-Sabh's motions for summary judgment [219, 223, 227] are granted in their entirety, terminating this case. This is a final and appealable order.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: September 12, 2008